UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X

LEIGHTON NELSON,                        :

                Petitioner,     :
                                            07 Civ. 3568 (JSR)(HBP)
     -against-                  :
                                            REPORT AND
WILLIAM BROWN,                  :           RECOMMENDATION

                Respondent.     :

----------------------------------X

          PITMAN, United States Magistrate Judge:

          TO THE HONORABLE JED S. RAKOFF, United States District

Judge,


I.  Introduction


          Petitioner Leighton Nelson seeks, by his pro se peti-

tion for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, an

Order vacating a judgment of conviction entered on November 19,

2003, after a jury trial, by the Supreme Court of the State of

New York, New York County (Goodman, J.), for criminal possession

of a weapon in the second degree and criminal possession of a

weapon in the third degree, in violation of New York Penal Law

Sections 265.03 and 265.02, respectively.  By that judgment,

petitioner was sentenced to a term of imprisonment of 12 years

followed by a maximum of five years post-release supervision on

the second degree weapon possession count, to run concurrently

with a term of five years on the third degree weapon possession count.  Petitioner is currently incarcerated pursuant to that judgment.

For the reasons set forth below, I respectfully recommend that the petition be denied.

II.  Facts

A.  Facts Giving Rise to
    Petitioner's Conviction

Petitioner was arrested during a traffic stop in November 2002 because he was carrying a loaded and operable semiautomatic pistol in his waistband and wearing a bullet-proof vest (Tr.[1] 462-64, 466-68, 530-32, 578-80).  Petitioner was subsequently indicted on the two weapons charges described above, and proceeded to trial on both charges.

B.  Relevant State
    Pre-Trial Proceedings

1.  Petitioner's Request for
    Appointment of New Counsel

In September 2003, just as prospective jurors were about to enter the courtroom for jury selection, petitioner's

---

[1]"Tr." refers to the transcript of proceedings which were conducted before the Trial Court on September 17, 19, 22, 23 and 24, 2003.

trial counsel declared that petitioner was asking for a new
attorney (Tr. 181).  Justice Goodman denied the application and
requested that the prospective jurors be brought in (Tr. 181).
Petitioner replied, "How can you deny me a new lawyer? . . .
We're not seeing eye to eye.  You couldn't force me to go to
trial with a lawyer that I am not communicating with" (Tr. 181).
Justice Goodman responded, "Because we're going to trial . . . I
have made my ruling.  If I am wrong, the Appellate Court will
tell me" (Tr. 181-82).  Petitioner retorted, "You is [sic] crazy,
man.  You is [sic] crazy" (Tr. 182).  There was a pause in the
proceedings, and petitioner's attorney assisted petitioner in
composing himself.

          Petitioner's trial attorney subsequently reported that
petitioner's brother, who was present in the courtroom, had also
asked him to withdraw from the case (Tr. 183).  Justice Goodman
inquired whether petitioner had retained the attorney who was
then representing him, and, after determining that he had,
reaffirmed that his retained counsel would remain on the case
because nothing had transpired that would prevent counsel from
representing petitioner (Tr. 183).  With Justice Goodman's
permission, petitioner's brother again requested a change of
counsel for petitioner because petitioner had not received any
"paperwork" or "information dealing with the case" and, as a
result, he felt that the petitioner was not receiving effective

assistance (Tr. 184-85).  Justice Goodman inquired what trial counsel had done that was ineffective, and petitioner's brother responded that counsel had not requested "certain minutes of the hearing" and had constantly told petitioner to plead guilty (Tr. 185).

Following this exchange, petitioner's counsel made extensive statements on the record supporting his contention that he had provided excellent counsel and was ready to proceed as counsel:  he had met with petitioner between 12 and 15 times, met with his family, interviewed witnesses, made petitioner aware of all proceedings, provided him with all three of the documents that he had received from the prosecution, i.e., the complaint, the indictment, and a Voluntary Disclosure Form, informed peti-tioner of his rights at trial, and convinced the prosecution to reduce its plea offer from 16 years to 14 years and eventually to 11 years, all of which occurred notwithstanding his not being fully paid (Tr. 185-88).  In response, Justice Goodman asked petitioner's counsel whether he had ever told petitioner that he would not represent petitioner if he was unwilling to go to trial, and petitioner's brother stated that counsel had done so (Tr. 188).  Petitioner's counsel was not given the opportunity to respond (Tr. 188).

Petitioner subsequently argued to the Trial Court that he was entitled to have counsel appointed (Tr. 188-89).  Justice

4

Goodman stated that that was "not his choice" because the court did not appoint a lawyer for people who could afford to pay for one (Tr. 189). Petitioner protested that he could no longer pay for a lawyer, as evidenced by his attorney's prior statement that he had not been paid (Tr. 189). In addition, petitioner stated that he did not want to go to trial represented by underpaid counsel (Tr. 189). Justice Goodman responded, "What's the difference?" and then added, "Sir, you see, the problem is, you've known about this case for a long period of time. You knew what you were facing. Nobody has forced you to take a plea. . . . You had a hearing. Your lawyer represented you. The fact that you didn't win doesn't mean he's ineffective" (Tr. 189-90). Justice Goodman then opined that petitioner's reasons for wanting his lawyer replaced made no sense and that he had been given "all the paperwork" (Tr. 190).

Petitioner stated that his counsel had not informed him that he had been charged with a class D felony in addition to the class C felony (Tr. 190). Justice Goodman then explained the two charges, and petitioner's counsel explained that petitioner was "mistaken" and that the class D felony "didn't come up much in [plea] discussion[s]" because the prosecution was only offering a bargain in connection with a plea to the class C felony (Tr. 191-92). The prosecution confirmed that the class D felony had never been offered as part of a plea bargain (Tr. 192).

Petitioner also repeated his claim that he had received no paperwork (Tr. 190). Justice Goodman stated that he assumed petitioner's trial counsel would give petitioner a copy of all of the Rosario material, and petitioner's counsel confirmed that he would do so with respect to "the Rosario material [he] received [the preceding] week, the limited Grand Jury testimony of [a police witness]" (Tr. 196). In addition, defense counsel stated that he had already reviewed all of the Rosario material with his client, and that he had read the grand jury testimony of the police witness aloud to petitioner (Tr. 199). The prosecution, at Justice Goodman's request, also explained to petitioner that it was not required to turn over police paperwork to him until a witness testified, at which point it was required to turn over paperwork relating to that witness, and that it would disclose all such paperwork relating to its trial witnesses to petitioner during jury selection (Tr. 196-98).

2.   The Trial Court's
      Preliminary
      Jury Instructions

Following this discussion, the prospective jurors entered the courtroom, and Justice Goodman explained the "ground rules" of the jury selection and trial process and the roles of the attorneys (Tr. 202-09). Justice Goodman briefly summarized the factual allegations in the indictment underlying each of the

charges against petitioner (Tr. 209-10).  Following this summary,
Justice Goodman explained to the jury that the arrest and indict-
ment were entitled to no weight as proof of guilt, that the
accused was to be presumed innocent, that the prosecution bore
the sole burden of proof, and that the prosecution was required
to prove guilt beyond a reasonable doubt (Tr. 210-18).  In
addition, Justice Goodman explained that each element of each
crime was required to be proven beyond a reasonable doubt, and
illustrated this principle with the elements of the crimes with
which petitioner was charged (Tr. 214-15).  Petitioner's counsel
made no objection concerning the Trial Court's instructions to
the prospective jurors (Tr. 201-383).

### 3.   Trial, Sentencing and Appeals

The jury found petitioner guilty on both counts on
September 24, 2003 (Tr. 667-68).  The Trial Court subsequently
adjudicated petitioner a violent felony offender on the basis of
one prior violent felony conviction and sentenced petitioner as
set forth above (Tr. S.[2] 3, 8).

Petitioner, represented by new counsel, appealed his
conviction to the Appellate Division of the Supreme Court, First
Department.  Petitioner argued that his state and federal consti-

---

[2]"Tr. S." refers to the transcript of petitioner's sentenc-
ing proceeding which was conducted on November 19, 2003.

tutional rights were violated in two ways:  (1) the Trial Court
erred by summarily rejecting petitioner's initial request for new
counsel before petitioner could state grounds for the request,
and petitioner's subsequent attempt to explain his request was
improperly compromised when counsel refuted petitioner's allega-
tions and (2) the Trial Court deprived petitioner of a fair trial
when it instructed the jurors in the midst of voir dire on some
of the elements of the charged offenses (Def.'s App. Br. 16, 38,
47, 54).

　　　　The Appellate Division unanimously affirmed peti-
tioner's conviction on March 14, 2006.  People v. Nelson, 27
A.D.3d 287, 287, 811 N.Y.S.2d 65, 65 (1st Dep't 2006).  The
Appellate Division found that the Trial Court properly denied
petitioner's request for the substitution of his retained counsel
with assigned counsel immediately before jury selection because
"[petitioner] did not establish good cause for such relief."  27
A.D.3d at 287, 811 N.Y.S.2d at 65-66.  In addition, the Appellate
Division found that new counsel was not necessary for petitioner
to argue the merits of his motion for new counsel in order to
avoid an apparent conflict of interest.  27 A.D.3d at 287, 811
N.Y.S.2d at 66.

　　　　Furthermore, the Appellate Division concluded that the
Trial Court was entitled to make inquiry of petitioner's counsel
in order to ensure that he was receiving effective representa-

tion, "without the delay of bringing in another attorney," and that petitioner's counsel's remarks outlining his efforts on petitioner's behalf could not be "compared to a situation where an attorney becomes a witness against his client by providing damaging factual information upon which the court relies in deciding an application . . . ."  27 A.D.3d at 287, 811 N.Y.S.2d at 66.  The Appellate Division also stated that, in any event, it was "clear that [petitioner's] counsel's remarks played no role in the court's decision."  27 A.D.3d at 287, 811 N.Y.S.2d at 66.

Finally, the Appellate Division declined to review petitioner's claim concerning the Trial Court's instructions to the prospective jurors because petitioner had failed to preserve that claim for appellate review.  27 A.D.3d at 287, 811 N.Y.S.2d at 66.  In addition, the Appellate Division stated that, were it to have reviewed the claim, it would have found no basis for reversal.  27 A.D.3d at 287, 811 N.Y.S.2d at 66.

The Court of Appeals granted leave to appeal and, on November 20, 2006, unanimously affirmed the decision of the Appellate Division.  People v. Nelson, 7 N.Y.3d 883, 860 N.E.2d 56, 826 N.Y.S.2d 593 (2006).  The Court of Appeals agreed that the Trial Court's denial of petitioner's motion for substitute counsel constituted a proper exercise of discretion because, even though it had initially rejected petitioner's application without inquiry, the Trial Court subsequently allowed petitioner to voice

his concerns about his counsel.  7 N.Y.3d at 884, 860 N.E.2d at
56, 826 N.Y.S.2d at 593.  In addition, the Court of Appeals
agreed that petitioner's counsel's comments defending his perfor-
mance did not create a conflict of interest requiring the Trial
Court to appoint new counsel.  7 N.Y.3d at 884, 860 N.E.2d at 56,
826 N.Y.S.2d at 593.  Finally, the Court of Appeals agreed that
petitioner's contention concerning the Trial Court's definition
of the elements of the charged crimes during its preliminary
instructions to prospective jurors was not properly preserved for
review.  7 N.Y.3d at 884, 860 N.E.2d at 57, 826 N.Y.S.2d at 593.

C.  <u>Federal Court Proceedings</u>

Petitioner, proceeding <u>pro se</u>, filed his petition for a
writ of habeas corpus on or about April 9, 2007 (Petition under
28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State
Custody, dated Apr. 9, 2007 ("Pet.")).  Petitioner asserts that
the Trial Court "violat[ed] the proscribed order of trial" by
"instructing the jury on the elements of the weapons charge[s]"
"[b]efore any evidence was presented," and "deni[ed him his]
right to remove [c]ounsel because of [the] conflict [of interest]
that developed," when the Trial Court "allowed defense counsel to
become a witness against [him]" (Pet. 3).  Respondent submitted a
memorandum of law in opposition to the petition on October 9,

2007 (Memorandum of Law in Opposition to the Petition for a Writ of Habeas Corpus, dated Oct. 9, 2007 ("Resp't's Br."))[3]

III.  <u>Analysis</u>

Respondent concedes that petitioner's petition is timely and that his claims were fully exhausted (Resp't's Br. 15-16).  However, respondent argues that petitioner's claim concerning the Trial Court's instructions to the prospective jurors is procedurally barred from federal habeas review and that his remaining claims fail on the merits (Resp't's Br. 18-26).

A.  <u>Procedural Bar</u>

Petitioner claims that the Trial Court denied him a fair trial by instructing the prospective jurors concerning the elements of the charged offenses before any evidence was presented.  Respondent replies that petitioner's claim is procedurally barred from federal habeas review because the Court of Appeals denied the claim on an independent and adequate state procedural ground.  In the alternative, respondent argues that the claim is not cognizable and fails on the merits (Resp't's Br.

---

[3]In addition, petitioner attached to his petition copies of the briefs which the parties submitted to the Appellate Division and the New York Court of Appeals, presumably for the purpose of asserting the arguments raised by his appellate counsel in those briefs.  However, appellate counsel's briefs do not assert any new arguments that are not already raised in the petition itself.

11

23-28).  Petitioner responds that the procedural requirement relied upon by the Court of Appeals was not adequate to support the judgment because it was not applicable to petitioner's case.

### 1.  Applicable Legal Principles

A habeas petitioner's constitutional claim can be procedurally barred if it is not asserted in state court proceedings in accordance with state procedural requirements and the state courts rely on that violation of state procedural requirements to reject the claim.  As the Court of Appeals for the Second Circuit has explained:

> The independent and adequate state ground doctrine first arose in the context of direct appeals to the Supreme Court from final judgments of the state courts. Under that doctrine the Supreme Court "will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment." Coleman v. Thompson, 501 U.S. 722, 729, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991).  Moreover, "[t]his rule applies whether the state law ground is substantive or procedural." Id.
>
> *     *     *
>
> The doctrine also applies in the context of federal courts reviewing applications for a writ of habeas corpus . . . .  [I]nvoking principles of comity and federalism . . . federal habeas courts faced with an independent and adequate state ground of decision defer in the same manner as does the Supreme Court on direct review.

Garcia v. Lewis, 188 F.3d 71, 76-77 (2d Cir. 1999); see also Murden v. Artuz, 497 F.3d 178, 191-92 (2d Cir. 2007); Cotto v.

12

<u>Herbert</u>, 331 F.3d 217, 239-41 (2d Cir. 2003); <u>Rhagi v. Artuz</u>, 309 F.3d 103, 106 (2d Cir. 2002) ("[I]t is settled law that an independent and adequate state law ground for a state court conviction cannot be disturbed on habeas."), <u>citing</u> <u>Coleman v. Thompson</u>, 501 U.S. 722, 729-31 (1991); <u>Brown v. State of New York</u>, 04-CV-1087 (NG)(VVP), 2006 WL 3085704 at *2 (E.D.N.Y. Oct. 30, 2006) ("When a habeas corpus petitioner defaults a federal claim in state court . . . by failing to preserve the claim for state appellate review . . . , the independent and adequate state ground doctrine bars federal habeas corpus review.").

        Dismissal of a claim on the ground that consideration of the merits is precluded by an adequate and independent state procedural ground is appropriate where the last reasoned state court decision expressly relies on a state procedural bar:

>           In <u>Harris [v. Reed]</u>, 489 U.S. 255, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989)], the Court held that "a procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case clearly and expressly states that its judgment rests on a state procedural bar." <u>Harris</u>, 489 U.S. at 263, 109 S.Ct. 1038 (internal quotation marks omitted).  We apply the <u>Long/Harris</u> presumption to the last "reasoned state judgment" . . . .  <u>See</u> <u>Ylst v. Nunnemaker</u>, 501 U.S. 797, 803, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991).

<u>Jones v. Stinson</u>, 229 F.3d 112, 118 (2d Cir. 2000); <u>see</u> <u>also</u> <u>Galarza v. Keane</u>, 252 F.3d 630, 637 (2d Cir. 2001) ("We have repeatedly stated that in order for federal habeas review to be procedurally barred, a state court must actually have relied on a

13

procedural bar as an independent basis for its disposition of the case, and the state court's reliance on state law must be unambiguous and clear from the face of the opinion.").

Federal habeas corpus review will not be precluded, however, if (1) the state procedural ground is not independent and adequate, see Jimenez v. Walker, 458 F.3d 130, 138 (2d Cir. 2006); Monroe v. Kuhlman, 433 F.3d 236, 241-42 (2d Cir. 2006); Cotto v. Herbert, supra, 331 F.3d at 238-39, (2) there is cause for and prejudice from petitioner's failure to assert his claims in accordance with state procedural law, or (3) a failure to consider the claim would result in a fundamental miscarriage of justice.  Schlup v. Delo, 513 U.S. 298, 324-27 (1995); Coleman v. Thompson, supra, 501 U.S. at 748-50; Harris v. Reed, 489 U.S. 255, 262 (1989); Green v. Travis, 414 F.3d 288, 294 (2d Cir. 2005).

## 2.   Express Reliance on a State Procedural Bar

Here, the Court of Appeals expressly relied on a state procedural bar in rejecting petitioner's claim that Justice Goodman violated petitioner's due process rights by giving improper preliminary instructions to the prospective jurors.  The Court of Appeals rejected petitioner's "contention that the court erred in defining the elements of the crime during its preliminary instructions" for the sole reason that that contention "was

14

not preserved for [its] review (see People v. Brown, 7 N.Y.3d
880, 826 N.Y.S.2d 595, 860 N.E.2d 55 [2006] [decided today])."
People v. Nelson, supra, 7 N.Y.3d at 884, 860 N.E.2d at 57, 826
N.Y.S.2d at 593.  The Court of Appeals' use of the phrase "not
preserved" and its citation to People v. Brown indicated that the
court was relying on New York's contemporaneous objection rule
for its decision.  See People v. Brown, supra, 7 N.Y.3d at 881,
826 N.Y.S.2d at 596, 860 N.E.2d at 55 (rejecting defendant's
claim that Justice Goodman gave improper preliminary instructions
to jury because that claim was "unpreserved for our review"),
citing People v. Gray, 86 N.Y.2d 10, 652 N.E.2d 919, 629 N.Y.S.2d
173 (1995) (discussing contemporaneous objection rule codified in
N.Y. Crim. Proc. L. § 470.05(2)).[4]

           3.   Independence from the
                Purported Federal Issue

     Because the Court of Appeals' reliance on the contempo-
raneous objection rule was the sole basis for its pertinent

---

     [4]Section 470.05(2) provides in pertinent part:

          For purposes of appeal, a question of law with respect
          to a ruling or instruction of a criminal court during a
          trial or proceeding is presented when a protest thereto
          was registered, by the party claiming error, at the
          time of such ruling or instruction or at any subsequent
          time when the court had an opportunity of effectively
          changing the same.

N.Y. Crim. Proc. L. § 470.05(2).

holding, the contemporaneous objection rule constitutes an independent state law basis for the Court of Appeals' holding. E.g., Cotto v. Herbert, supra, 331 F.3d at 239 (Appellate Division relied on independent procedural ground when it found petitioner's claim to be "unpreserved"); Garcia v. Lewis, supra, 188 F.3d at 77 ("There is no question that the Appellate Division's explicit invocation of the procedural bar [by stating that petitioner failed to preserve his claim for review] constitutes an 'independent' state ground . . . even though the court spoke to the merits of Garcia's claim in an alternative holding.").

4.   Adequacy of the
     State Law Ground

New York's contemporaneous objection rule is "adequate" to support the Court of Appeals' decision.  A state procedural rule is adequate if it is "'firmly established and regularly followed' by the state in question."  Garvey v. Duncan, 485 F.3d 709, 713 (2d Cir. 2007), quoting Lee v. Kemna, 534 U.S. 362, 375 (2002).  "Moreover, even though a rule generally might be considered firmly established and regularly followed, considered in the specific circumstances of a case, it still might be inadequate to preclude federal review, if its application would be 'exorbitant,' that is to say, an arid 'ritual . . . [that] would further no perceivable state interest[.]'"  Richardson v. Greene, supra, 497 F.3d at 218, quoting Lee v. Kemna, supra, 534 U.S. at 366.

16

Here, New York's contemporaneous objection requirements are firmly established, and the state courts have regularly enforced those requirements.  See Garcia v. Lewis, supra, 188 F.3d at 79 ("New York's contemporaneous objection rule is not rendered 'inadequate' on account of novelty or sporadic application, as sometimes is the case.").  Furthermore, the Court of Appeals' application of the rule serves a legitimate state interest in this case because petitioner's contemporaneous objection would have alerted the trial judge to any potential error and given the judge the opportunity to avoid such error.  Garcia v. Lewis, supra, 188 F.3d at 78, citing Wainwright v. Sykes, 433 U.S. 72, 88 (1977) and Henry v. Mississippi, 379 U.S. 443, 448 (1965).  Accordingly, the Second Circuit has "observed and deferred to New York's consistent application of its contemporaneous objection rules."  Garcia v. Lewis, supra, 188 F.3d at 79.

Petitioner argues that "it does not matter that there was no [contemporaneous] objection" to the Trial Court's instructions concerning the elements of the weapons possession charges because the Trial Court's preliminary discussion of those elements violated the proper "mode of proceedings" and therefore fell into an exception to the New York requirement of a contemporaneous objection (Pet. 3).  On the record in this case, however, I cannot revisit the state court's determination that the claim was unpreserved as a matter of state law.  As explained by the

17

Court of Appeals for the Second Circuit in <u>Rhagi v. Artuz</u>, <u>supra</u>, 309 F.3d at 107:

> The relevant question is not whether the state court was "right or wrong" in its decision, but rather whether its holding had a "fair or substantial basis in state law." <u>Garcia</u>[, <u>supra</u>,] 188 F.3d at 77-78 (citations omitted) (internal quotation marks omitted). [Thus, e]ven if the Appellate Division was incorrect in its ruling, . . . [when] there was . . . , at the very least, a fair or substantial basis in state law for its decision . . . , there [i]s an independent and adequate state-law procedural bar precluding federal habeas review. <u>See</u> <u>Slack</u> [<u>v. McDaniel</u>, 529 U.S. 473, 484 (2000)].

<u>Accord</u> <u>Bell v. Poole</u>, 00 Civ. 5214 (ARR), 2003 WL 21244625 at *10 (E.D.N.Y. April 10, 2003), <u>aff'd</u> <u>without</u> <u>published</u> <u>opinion</u>, 103 F. App'x 691 (2d Cir. 2004).

Under New York law, "'any matter which a party wishes the appellate court to decide [must] have been brought to the attention of the trial court at a time and in a way that gave the latter the opportunity to remedy the problem and thereby avert reversible error.'" <u>Richardson v. Greene</u>, 497 F.3d 212, 218 (2d Cir. 2007), <u>indirectly</u> <u>quoting</u> <u>People v. Luperon</u>, 85 N.Y.2d 71, 78, 647 N.E.2d 1243, 1246-47, 623 N.Y.S.2d 735, 738-39 (1995). However, no contemporaneous objection is necessary for errors "that would affect the organization of the court or the mode of proceedings prescribed by law." <u>People v. Patterson</u>, 39 N.Y.2d 288, 295, 347 N.E.2d 898, 902, 383 N.Y.S.2d 573, 577 (1976), <u>aff'd</u> <u>sub</u>. <u>nom</u>. <u>Patterson v. New York</u>, 432 U.S. 197 (1977).

18

The Court of Appeals has narrowly interpreted the mode-of-proceedings exception described in <u>Patterson</u> to apply to a "very small class of cases," 36A <u>Carmody-Wait New York Practice</u> § 207:21 (2d ed. 2009), involving fundamental alterations to such basic elements of the proceedings as the jurisdiction of the court, the burden of proof, and the number of jurors.  <u>See</u> <u>People v. Gray</u>, <u>supra</u>, 86 N.Y.2d at 21, 652 N.E.2d at 922, 629 N.Y.S.2d at 176.  New York courts have routinely applied the contemporaneous objection rule -- and expressly found the mode-of-proceedings exception inapplicable -- to claims alleging errors in the Trial Court's preliminary instructions to the jury, although the exact nature of the errors alleged to have occurred is not entirely clear from the Appellate Division's opinions.  <u>E.g.</u>, <u>People v. Brown</u>, 278 A.D.2d 60, 60, 717 N.Y.S.2d 177, 177 (1st Dep't 2000) (no exception to contemporaneous objection rule where trial court gave elements of offense in preliminary jury instructions); <u>People v. Bosket</u>, 216 A.D.2d 791, 629 N.Y.S.2d 296 (3rd Dep't 1995) (no exception to contemporaneous objection rule where defendant claimed "misstatements" and "minor errors" in preliminary instructions); <u>People v. Rodriquez</u>, 155 A.D.2d 627, 628, 547 N.Y.S.2d 677, 678 (2d Dep't 1989) (no exception to contemporaneous objection rule where trial court made comments during preliminary instructions that allegedly shifted burden of proof); <u>People v. Glinsman</u>, 107 A.D.2d 710, 711, 484 N.Y.S.2d 64, 66 (2d

19

Dep't 1985) (same); <u>cf</u>. <u>People v. Davis</u>, 12 A.D.3d 456, 457, 783 N.Y.S.2d 850, 850 (2d Dep't 2004) (mode-of-proceedings error occurred when trial court defined elements of crime during preliminary instructions), <u>overruled by</u> <u>People v. Harper</u>, 32 A.D.3d 16, 18, 20, 818 N.Y.S.2d 113, 114, 116 (2d Dep't 2006).

Although the Court of Appeals did not address the precise issue of whether a Trial Court's preliminary instructions to the jury concerning the elements of a defendant's crime constituted a mode-of-proceedings error until petitioner's case and its companion case, <u>People v. Brown</u>, <u>supra</u>, 7 N.Y.3d at 881, 826 N.Y.S.2d at 596, 860 N.E.2d at 55, were decided, the principle that such instructions did not constitute a mode-of-proceedings error was already established in the First Department, where petitioner brought his appeal. <u>People v. Brown</u>, <u>supra</u>, 278 A.D.2d at 60, 717 N.Y.S.2d at 177. Thus, there was a fair or substantial basis in firmly established state law for the Court of Appeals' determination that petitioner's claim concerning the Trial Court's preliminary instructions was barred by the contemporaneous objection rule. Accordingly, petitioner is procedurally barred from raising that claim in his petition.

> 5. Cause, Prejudice and
>    <u>Miscarriage of Justice</u>

Petitioner can overcome this procedural bar if he can show "cause for" and "prejudice" from his state procedural

default or that a failure to consider his federal claim will result in a "fundamental miscarriage of justice." Coleman v. Thompson, supra, 501 U.S. at 750.  Cause for a state procedural default is established when a petitioner shows that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule[.]"  Murray v. Carrier, 477 U.S. 478, 488 (1986).  For example, "counsel's ineffectiveness in failing properly to preserve [a] claim for review in state court" may constitute cause for a procedural default. Edwards v. Carpenter, 529 U.S. 446, 451 (2000).

        Here, petitioner does not make any showing of cause for his procedural default.  Petitioner claims that his trial counsel labored under a conflict of interest, but does not assert a claim of ineffective assistance based on trial counsel's failure to preserve petitioner's claims concerning Justice Goodman's preliminary jury instructions.  Thus, counsel's alleged ineffective assistance cannot constitute cause.  See Edwards v. Carpenter, supra, 529 U.S. at 451-52; Mileto v. Philips, 03-CV-0353 (NPM), 2007 WL 1746249 at *7 (N.D.N.Y. June 13, 2007) (petitioner did not establish cause for procedural default of judicial bias claim where petitioner's federal ineffective-assistance claim was not based on trial counsel's failure to preserve the judicial bias claim).  Because petitioner cannot show cause, I need not address whether he can show prejudice.  Levine v. Comm'r of Corr. Servs.,

44 F.3d 121, 127 (2d Cir. 1995); <u>Stepney v. Lopes</u>, 760 F.2d 40, 45 (2d Cir. 1985) ("Since a petitioner who has procedurally defaulted in state court must show both cause and prejudice in order to obtain federal habeas review, we need not, in light of our conclusion that there was no showing of cause, reach the question of whether or not [petitioner] showed prejudice.").

Finally, petitioner does not and cannot show that a fundamental miscarriage of justice will result if his claim is not considered.  "To establish a 'miscarriage of justice,' a petitioner must demonstrate that he is 'actually innocent.'" <u>Cruz v. Filion</u>, 456 F. Supp.2d 474, 481 (S.D.N.Y. 2006), <u>quoting</u> <u>Aparicio v. Artuz</u>, 269 F.3d 78, 90 (2d Cir. 2001).  To sustain this burden, petitioner must offer "new reliable evidence . . . that was not presented at trial." <u>Schlup v. Delo</u>, <u>supra</u>, 513 U.S. at 324.  Petitioner has not offered any new evidence establishing that he is actually innocent.

Accordingly, petitioner's claim that he was denied a fair trial based on the Trial Court's preliminary instructions to the jury should be dismissed as procedurally barred.[5]

_____

[5]Even if petitioner's claim were not procedurally barred, I would find that his claim was not cognizable on habeas review. Petitioner does not cite to any federal statutory or constitutional right which he believes to have been violated by the preliminary instructions to the jury.  On appeal to the Appellate Division, petitioner's only reference to federal law was a bare citation to the Fourteenth Amendment.  The remainder of appellate counsel's arguments pertained to alleged violations of state

(continued...)

B.  The Merits of
    Petitioner's Remaining Claims

1.  Standard of Review

A habeas petitioner must meet a stringent standard before a federal court can issue the writ.  Specifically, habeas relief may be granted only when the state court's decision:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The Supreme Court has explained these alternative standards:

---

[5](...continued)
rules of criminal procedure concerning the proper order of trial and the proper scope of preliminary jury instructions (Brief for Defendant-Appellant, dated Mar. 2005, annexed as Exhibit A to the Declaration of Ashlyn Dannelly, Esq., in Opposition to the Petition for a Writ of Habeas Corpus, dated Oct. 9, 2007, at 23-32).  Such violations or errors of state law or procedure, even if proven, generally do not constitute grounds for habeas review. Estelle v. McGuire, 502 U.S. 62, 68 (1991), citing Lewis v. Jeffers, 497 U.S. 764, 780 (1990) and Pulley v. Harris, 465 U.S. 37, 41, 104 S.Ct. 871, 874-75, 79 L.Ed.2d 29 (1984); see also Adams v. Greiner, 02 Civ. 6328 (GEL), 2004 WL 912085 at *2 (S.D.N.Y. Apr. 29, 2004) ("Habeas corpus is not an extension of the appeals process in the state court.  Rather, it is a remedy for violations of a defendant's rights under the federal constitution, and a very narrow remedy at that.").

23

First, we have explained that a decision by a state court is "contrary to" our clearly established law if it "applies a rule that contradicts the governing law set forth in our cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent." <u>Williams v. Taylor</u>, 529 U.S. 362, 405-06 (2000).  See also <u>Early v. Packer</u>, 537 U.S. 3, 7-8 (2002) (<u>per</u> <u>curiam</u>). . . .

Second, [petitioner] can satisfy § 2254(d) if he can demonstrate that the [State] Court's decision involved an "unreasonable application" of clearly established law.  As we have explained:

"[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [a Supreme Court case] incorrectly.  See <u>Bell v. Cone</u>, 535 U.S. 685, 698-699 (2002); <u>Williams</u>, <u>supra</u>, at 411.  Rather, it is the habeas applicant's burden to show that the state court applied [that case] to the facts of his case in an objectively unreasonable manner."

<u>Woodford v. Visciotti</u>, 537 U.S. 19, 24-25 (2002) (<u>per curiam</u>).

<u>Price v. Vincent</u>, 538 U.S. 634, 640-41 (2003); <u>accord</u> <u>Waddington v. Sarausad</u>, --- U.S. ---, ---, 129 S.Ct. 823, 831 (2009); <u>Brown v. Payton</u>, 544 U.S. 133, 139-40 (2005); <u>see also</u> <u>Lockyer v. Andrade</u>, 538 U.S. 63, 70-72 (2003); <u>Hoi Man Yung v. Walker</u>, 468 F.3d 169, 176 (2d Cir. 2006); <u>Hawkins v. Costello</u>, 460 F.3d 238, 242-43 (2d Cir. 2006); <u>Brown v. Artuz</u>, 283 F.3d 492, 500-01 (2d Cir. 2002).

In addition to the definition of "unreasonable application" set forth above, a state court may unreasonably apply Supreme Court precedent "if the state court unreasonably extends

a legal rule established by the Supreme Court or if it unreasonably fails to extend a legal rule to a context in which the rule reasonably should apply." Serrano v. Fischer, 412 F.3d 292, 296-97 (2d Cir. 2005). "Unreasonableness is determined by an 'objective' standard." Gersten v. Senkowski, 426 F.3d 588, 607 (2d Cir. 2005), quoting Williams v. Taylor, 529 U.S. 362, 409 (2000); Hawkins v. Costello, 460 F.3d 238, 242-43 (2d Cir. 2006).

Both the "contrary to" and "unreasonable application" clauses "restrict[] the source of clearly established law to [the Supreme] Court's jurisprudence." Williams v. Taylor, supra, 529 U.S. at 412. "[C]learly established [f]ederal law . . . refers to the holdings, as opposed to the dicta, of th[e] Court's decisions as of the time of the relevant state-court decision." Carey v. Musladin, 549 U.S. 70, 74 (2006) (internal quotations omitted). "That federal law, as defined by the Supreme Court, may either be a generalized standard enunciated in the [Supreme] Court's case law or a bright-line rule designed to effectuate such a standard in a particular context." Kennaugh v. Miller, 289 F.3d 36, 42 (2d Cir. 2002); Davis v. Grant, 532 F.3d 132, 140 (2d Cir. 2008). "A petitioner can not win habeas relief solely by demonstrating that the state court unreasonably applied Second Circuit precedent." Yung v. Walker, 341 F.3d 104, 110 (2d Cir. 2003); accord DelValle v. Armstrong, 306 F.3d 1197, 1200 (2d Cir. 2002).

25

A ruling that is clearly erroneous is not necessarily a ruling that constitutes an unreasonable application of federal law.  Lockyer v. Andrade, supra, 538 U.S. at 75 (The "objectively unreasonable" and "clearly erroneous" standards "are not the same.  The gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unrea-sonableness."); Davis v. Grant, supra, 532 F.3d at 140; Cotto v. Herbert, 331 F.3d 217, 248 (2d Cir. 2003).  However, "'the increment [of error beyond clear error] need not be great; otherwise, habeas relief would be limited to state court deci-sions so far off the mark as to suggest judicial incompetence.'"  Brisco v. Ercole, 565 F.3d 80, 88 (2d Cir. 2009), quoting Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir. 2000).

A habeas petitioner must also satisfy a high standard to challenge successfully a state court's factual ruling:

> [U]nder AEDPA, "a determination of a factual issue made by a State court shall be presumed to be correct.  The [petitioner] shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1); see also Parsad v. Greiner, 337 F.3d 175, 181 (2d Cir. 2003) ("This pre-sumption of correctness is particularly important when reviewing the trial court's assessment of witness credibility.").  A state court's findings "will not be overturned on factual grounds unless objectively unrea-sonable in light of the evidence presented in the state-court proceeding."  Miller-El v. Cockrell, 537 U.S. 322, 340, 123 S.Ct. 1029, 1041 (2003).

Tolentino v. Brown, 05 Civ. 9002 (GBD)(THK), 2009 WL 1347699 at *7 (S.D.N.Y. May 5, 2009); accord Schriro v. Landrigan, 550 U.S.

465, 473-74 (2007) ("[The] AEDPA also requires federal habeas courts to presume the correctness of state courts' factual findings unless applicants rebut this presumption with 'clear and convincing evidence.'"); Drake v. Portuondo, 553 F.3d 230, 239 (2d Cir. 2009); Lynn v. Bliden, 443 F.3d 238, 247 (2d Cir. 2006); Mask v. McGinnis, 233 F.3d 132, 139 (2d Cir. 2000); Nightengale v. Conway, 05 Civ. 1994 (GBD)(THK), 2009 WL 995178 at *8 (S.D.N.Y. Apr. 13, 2009); see also Rosa v. McCray, 396 F.3d 210, 220 (2d Cir. 2005).  "The clear and convincing evidence standard is somewhere between the preponderance of the evidence standard and the proof beyond a reasonable doubt standard." Bastien v. William, 03 Civ. 5749 (DLC), 2004 WL 2978283 at *4 (S.D.N.Y. Dec. 20, 2004), citing Addington v. Texas, 441 U.S. 418, 431 (1979). "The Second Circuit has interpreted this standard to require that the evidence support a conclusion with a 'high degree of certainty.'" Bastien v. William, supra, 2004 WL 2978283 at *4, quoting United States v. Chimurenga, 760 F.2d 400, 405 (2d Cir. 1985).

To be entitled to the deferential standard of review under either sub-paragraph of subsection 2254(d), the state courts must have resolved the petitioner's claims "on the merits." Cotto v. Herbert, supra, 331 F.3d at 230; see also Ryan v. Miller, 303 F.3d 231, 245 (2d Cir. 2002) ("[I]n order for this deferential standard of § 2254 to apply, we must first determine

that the state court considered [petitioner's claim] on its
merits."); Sellan v. Kuhlman, 261 F.3d 303, 309-10 (2d Cir.
2001).

The Second Circuit has instructed habeas courts to
"classify" a state court decision as either:  (1) "fairly appear-
ing to rest primarily on federal law or to be interwoven with
federal law"; or (2) "fairly appearing to rest primarily on state
procedural law."  Jimenez v. Walker, 458 F.3d 130, 145 (2d Cir.
2006).  "If the state court's decision falls into the first
category, and does not 'contain a clear statement of reliance on
a state procedural bar,' the decision must be treated as having
been made on the merits."  Mateo v. Fishkill Corr. Facility, 04
Civ. 3420 (DGT), 2007 WL 2362205 at *5 (E.D.N.Y. Aug. 14, 2007),
quoting Jimenez v. Walker, supra, 458 F.3d at 138.  To make this
classification, habeas courts in this circuit examine "(1) the
face of the state-court opinion, (2) whether the state court was
aware of a procedural bar, and (3) the practice of state courts
in similar circumstances."  Jimenez v. Walker, supra, 458 F.3d at
145 n.16.

Here, upon examining these three factors, I conclude
that the Court of Appeals adjudicated the merits of petitioner's
claims concerning his request to appoint substitute counsel.  The
Court of Appeals' analysis appears to have been purely substan-
tive because it directly addressed petitioner's factual and legal

arguments concerning that request and did not note any procedural obstacles to its consideration of those arguments. People v. Nelson, supra, 7 N.Y.3d at 884, 860 N.E.2d at 56, 826 N.Y.S.2d at 593. In addition, the Court of Appeals suggested that it was interpreting federal law by citing an earlier Court of Appeals case concerning the appointment of substitute counsel which, in turn, discussed numerous federal precedents. People v. Nelson, supra, 7 N.Y.3d at 884, 860 N.E.2d at 56-57, 826 N.Y.S.2d at 593, citing People v. Medina, 44 N.Y.2d 199, 207-10, 375 N.E.2d 768, 772-74, 404 N.Y.S.2d 588, 592-94 (1978). Moreover, the Court of Appeals did not explicitly address any state procedural rules in connection with petitioner's claims concerning the appointment of substitute counsel, and there is no indication that it believed such rules to be relevant. Thus, although the Court of Appeals did not mention relevant federal case law, its analysis neverthe-less extended to the merits of the federal principles in issue. See Early v. Packer, 537 U.S. 3, 8 (2002) (applying deferential AEDPA standard to state appellate court decision which stated that state trial court "did not . . . deny [petitioner] any constitutional rights," but did not cite to federal caselaw); Mosby v. Senkowski, 470 F.3d 515, 519 (2d Cir. 2006) (Appellate Division adjudicated merits by summarily rejecting petitioner's state coram nobis petition without comment and without mention of petitioner's federal claim); Wade v. Herbert, 391 F.3d 135, 140

(2d Cir. 2004) (Appellate Division adjudicated merits where it held that "[t]he [petitioner's] remaining contentions are without merit," but did not cite federal caselaw).

        2.  Petitioner's
            Motion for New Counsel

      Petitioner argues that he was denied his "right to remove [his retained] counsel" and that the Trial Court should have granted his request to appoint substitute counsel due to the "conflict" that developed when counsel "bec[a]me a witness against [him]" (Pet. 3).  In effect, petitioner argues that he was denied both the counsel of his choice and the effective assistance of counsel in light of the alleged conflict of interest that developed when his retained counsel defended his representation of petitioner.[6]

---

[6]In light of petitioner's <u>pro se</u> status, I hold his submissions "to less stringent standards than formal pleadings drafted by lawyers." <u>Hughes v. Rowe</u>, 449 U.S. 5, 9 (1980).  I am required to read his submissions "liberally and interpret them to raise the strongest arguments that they suggest." <u>McPherson v. Coombe</u>, 174 F.3d 276, 280 (2d Cir. 1999).  The following short paragraph constitutes the entirety of petitioner's argument concerning the Trial Court's violation his "right to remove counsel":

      Ground one:  Denial of right to remove Counsel because of conflict:

      (i) Supporting Facts:  After a pre-trial suppression hearing and before voi[r] dire, defense counsel made an application for new counsel on petitioner's behalf which was summarily denied by the court before ever
                      (continued...)

The Sixth Amendment to the Constitution guarantees that, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence."  The Supreme Court has observed that, "while the right to select and be represented by one's preferred attorney is comprehended by the Sixth Amendment, the essential aim of the Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers."  Wheat v. United States, 486 U.S. 153, 159 (1988).  Thus, "'[w]hile a defendant has a right to counsel of his choice under the Sixth Amendment, it is not an absolute right."  United States v. Brumer, 528 F.3d 157, 160 (2d Cir. 2008) (per curiam), quoting United States v. Paone, 782 F.2d 386, 392 (2d Cir. 1986).  In particular, "the right to counsel of choice does not extend to defendants who require counsel to be appointed for them."  United States v. Gonzalez-Lopez, 548 U.S. 140, 151 (2006).  "[I]ndigent defendants do not have a veto over who is appointed to defend them, provided that appointed counsel's representation is adequate."  Felder v. Goord, 564 F. Supp.2d 201, 220 (S.D.N.Y. 2008), citing Caplin &

---

⁶(...continued)
giving petitioner the opportunity to explain why this request was be[ing] made.  But [t]he court did allow[] defense counsel to become a witness against petitioner first [sic]

(Pet. 3).

Drysdale v. United States, 491 U.S. 617, 624 (1989); see also
United States v. Schmidt, 105 F.3d 82, 89 (2d Cir. 1997) ("Be-
cause the right to counsel of one's choice is not absolute, a
trial court may require a defendant to proceed to trial with
counsel not of defendant's choosing; although it may not compel
defendant to proceed with incompetent counsel.").

A court is not constitutionally required to appoint new
counsel during trial absent a showing of good cause,

> such as a conflict of interest, a complete breakdown in
> communication or an irreconcilable conflict which leads
> to an apparently unjust verdict. United States v.
> Calabro, 467 F.2d 973, 986 (2d Cir. 1972). The Sixth
> Amendment may be violated where a court "refuses to
> inquire into a seemingly substantial complaint about
> counsel when he has no reason to suspect the bona fides
> of the defendant, or if on discovering justifiable
> dissatisfaction a court refuses to replace the attor-
> ney." Id. In the absence of a genuine conflict impli-
> cating the Sixth Amendment, "[j]udges must be vigilant
> that requests for appointment of a new attorney on the
> eve of trial not become a vehicle for achieving delay."
> United States v. Llanes, 374 F.2d 712, 717 (2d Cir.
> 1967).

Felder v. Goord, supra, 564 F. Supp.2d at 220.

In assessing petitioner's claim that his counsel was
ineffective, the Trial Court permitted petitioner's attorney to
respond to allegations from petitioner's brother that the attor-
ney had not provided petitioner with certain documents and had
constantly advised petitioner to accept the prosecution's plea
offer (Tr. 185). The attorney provided detailed and convincing
factual rebuttals to the brother's claims, and the Trial Court

took pains to ensure that petitioner would have the opportunity to review every document that he was entitled to review prior to trial.  Petitioner does not now argue that his counsel's alleged failure to provide him with such documents and his counsel's alleged advice to plead guilty rendered counsel ineffective. Rather, petitioner's sole argument is that his trial attorney's statements concerning his representation of petitioner created a conflict of interest.

The New York Court of Appeals' rejection of petitioner's argument was not contrary to, nor did it involve an unreasonable application of, clearly established federal law.  It is well settled that "the more common complaints defendants make in efforts to be rid of an appointed attorney," namely, complaints regarding strategic decisions such as whether to file certain motions, pursue certain evidentiary leads, object to the introduction of certain evidence at trial, and call certain witnesses, "do not give rise to a conflict of interest, even though the attorney may contradict the defendant's allegation in responding to the accusation."  United States v. Moree, supra, 220 F.3d at 71; see United States v. White, 174 F.3d 290, 296 (2d Cir. 1999).

Petitioner's allegations, and his trial attorney's responses, mirror those which Moree found insufficient to constitute an actual conflict.

33

In <u>Moree</u>, appointed counsel had represented the defendant over the course of several months of pre-trial proceedings when the defendant wrote to the court on two occasions requesting that his counsel be replaced for failure to move for speedy trial, failure to prepare adequately, and failure to discuss strategic choices with him.  The trial court held a hearing at which the defendant further complained that his appointed counsel was "incompetent" as well as "inefficient," and that counsel "had not sent him any 'paperwork' about his case and had not adequately explained the case to him."  <u>United States v. Moree</u>, <u>supra</u>, 220 F.3d at 67.  In response, counsel disputed the defendant's characterizations of his efforts and explained that, among other things, he had had meetings with the defendant at the courthouse cellblock, "had played all of the wiretap tapes, had gone over all of the transcripts, and was 'completely prepared to start trial' having 'spent a lot of time preparing.'"  <u>United States v. Moree</u>, <u>supra</u>, 220 F.3d at 67.  The trial court denied the defendant's request for appointment of new counsel, and the defendant subsequently pleaded guilty.  <u>United States v. Moree</u>, <u>supra</u>, 220 F.3d at 67-68.  The Second Circuit affirmed his conviction, finding that the defendant's allegations of ineffectiveness and his counsel's response to those allegations did not demonstrate an actual conflict of interest because any other

34

result would permit a criminal defendant to fabricate a conflict unilaterally.

> Defendants for whom attorneys have been appointed under the Criminal Justice Act very commonly complain to the court in the early stages of the representation in an effort to have a new attorney appointed.  It is commonplace for such a defendant to allege that the attorney is not paying sufficient attention to his case, has not come to see him in prison, has not undertaken sufficient investigation, is not making necessary motions, is not calling witnesses, or is trying to induce the defendant to plead guilty.  If the mere making of such an accusation, regardless of lack of justification, ipso facto resulted in a conflict of interest because the attorney cannot defend himself without contradicting his client, district courts would lose control of the criminal cases before them.  Defendants represented by appointed attorneys would effectively be able to change attorneys at will.  Judges could be prevented from starting trials, and trials conducted by an attorney who had been previously accused of such dereliction would be subject to subsequent invalidation on the theory that the defendant was represented at trial by an attorney who had an actual conflict of interest.

220 F.3d at 71-72.

Petitioner's request for replacement counsel here, and his attorney's response, did not raise the sorts of "extremely serious and . . . unusual" issues that give rise to an actual conflict.  Petitioner at no time alleged that his counsel had attempted to induce him to plead guilty by means of threats, coercion or misinformation.  See generally Lopez v. Scully, 58 F.3d 38, 41 (2d Cir. 1995).  Petitioner's primary complaint was that he and his attorney were not "seeing eye to eye" and not "communicating" (Tr. 181).  In addition, petitioner's brother

complained that petitioner's attorney had not provided any "paperwork" or "information dealing with the case," had not requested "certain minutes of the hearing" and had constantly advised petitioner to accept the prosecution's plea offer (Tr. 184-85).  Upon questioning by the Trial Court, petitioner further complained that he had not been told that he had been charged with a class D felony in addition to the class C felony  (Tr. 189, 190).  <u>Moree</u> addressed each of these complaints -- failure to communicate developments, failure to provide documentation and paperwork, advice to the defendant to plead guilty and failure to adequately explain the case, including the charge -- and determined that they did not indicate a conflict of interest.[7]  Therefore, the Court of Appeals did not unreasonably apply federal law when it rejected petitioner's Sixth Amendment Claim for failure to establish an actual conflict.

---

[7]Justice Goodman also asked petitioner's attorney <u>sua</u> <u>sponte</u> whether he had ever told petitioner that he would not represent petitioner if petitioner was unwilling to go to trial.  Petitioner's brother stated that counsel had done so, thus apparently incorporating this complaint into his allegations of ineffectiveness (Tr. 188).  At that moment, however, petitioner changed the subject, and petitioner's counsel was not given the opportunity to respond (Tr. 188).  In any event, even if counsel had stated at the outset that he would only represent petitioner if he was willing to go to trial, that would not create any divergence with petitioner's interests "with respect to a material factual or legal issue or to a course of action."  An attorney's insistence that his client be willing to go to trial implies a convergence of interests and courses of action, <u>i</u>.<u>e</u>., a mutual interest in litigating the case and having one's day in court, rather than any divergence.

IV.  Conclusion

Accordingly, for all the foregoing reasons, I respect-
fully recommend that the petition be denied.

In addition, because petitioner has not made a substan-
tial showing of the denial of a constitutional right, I also
recommend that a certificate of appealability not be issued. 28
U.S.C. § 2253.  To warrant the issuance of a certificate of
appealability, "petitioner must show that reasonable jurists
could debate whether . . . the petition should have been resolved
in a different manner or that the issues presented were adequate
to deserve encouragement to proceed further."  Middleton v.
Attorneys Gen., 396 F.3d 207, 209 (2d Cir. 2005) (per curiam)
(internal quotation marks omitted); see also Love v. McCray, 413
F.3d 192, 195 (2d Cir. 2005) (per curiam).  For the reasons set
forth above, I conclude that there would be no difference of
opinion among reasonable jurists that petitioner's federal rights
were not violated.

I further recommend that certification pursuant to 28
U.S.C. § 1915(a)(3) not be issued because any appeal from this
Report and Recommendation, or any Order entered thereon, would
not be taken in good faith.  See Coppedge v. United States, 369
U.S. 438, 445 (1962).

V.   Objections

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of
the Federal Rules of Civil Procedure, the parties shall have ten
(10) days from receipt of this Report to file written objections.
See also Fed.R.Civ.P. 6(a) and 6(e).  Such objections (and
responses thereto) shall be filed with the Clerk of the Court,
with courtesy copies delivered to the Chambers of the Honorable
Jed S. Rakoff, United States District Judge, 500 Pearl Street,
Room 1340, and to the Chambers of the undersigned, 500 Pearl
Street, Room 750, New York, New York 10007.  Any requests for an
extension of time for filing objections must be directed to Judge
Rakoff.  FAILURE TO OBJECT WITHIN TEN (10) DAYS **WILL** RESULT IN A
WAIVER OF OBJECTIONS AND **WILL** PRECLUDE APPELLATE REVIEW.  Thomas
v. Arn, 474 U.S. 140 (1985); United States v. Male Juvenile, 121
F.3d 34, 38 (2d Cir. 1997); IUE AFL-CIO Pension Fund v. Herrmann,
9 F.3d 1049, 1054 (2d Cir. 1993); Frank v. Johnson, 986 F.2d 298,
300 (2d Cir.); Wesolek v. Canadair Ltd., 838 F.2d 55, 57-59 (2d

Cir. 1988); <u>McCarthy v. Manson</u>, 714 F.2d 234, 237-238 (2d Cir.

1983).

Dated:   New York, New York
         July 1, 2009

                                    Respectfully submitted,


                                    HENRY PITMAN
                                    United States Magistrate Judge

Copies mailed to:

Mr. Leighton Nelson
03-A-6428
Woodbourne Correctional Facility
Riverside Drive
Woodbourne, New York   12788

Ashlyn Dannelly, Esq.
Assistant Attorney General of
  the State of New York
120 Broadway
New York, New York   10217